```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF INDIANA
                    HAMMOND DIVISION
```

```
DARRELL BRUCE,                     )
                                   )
     Plaintiff,                    )
                                   )
vs.                                )   NO. 2:05-CV-330
                                   )
KEYBANK NATIONAL ASSOCIATION       )
d/b/a CHAMPION MORTGAGE,           )
                                   )
     Defendant.                    )
```

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiff's Motion for Summary Judgment, filed on August 31, 2006 (DE# 83); (2) Defendant's Amended Motion for Summary Judgment (DE# 87), filed on September 28, 2006; and (3) Champion Mortgage's Motion to Strike Plaintiff's "Reply" in Support of Statement of Material Facts (DE# 100), filed on October 20, 2006.  For the reasons set forth below, the motions for summary judgment are each **GRANTED IN PART and DENIED IN PART**.  The motion to strike is **DENIED AS MOOT**.

Plaintiff's Motion for Summary Judgment is **GRANTED** to the extent it seeks summary judgment on the issue that Defendant failed to extend a "firm offer of credit" in connection with its access of Plaintiffs' "consumer report" in violation of the Fair Credit Reporting Act.  In all other respects, however, this motion is **DENIED**.

Defendant's Amended Motion for Summary Judgment is **GRANTED** to the

extent that it seeks summary judgment on the issue that Defendant did not willfully violate the Fair Credit Reporting Act.  In all other respects, however, this motion is **DENIED**.

Because there is no genuine issue of material fact that would allow a reasonable juror to find that Defendant willfully violated the Fair Credit Reporting Act, this case is **DISMISSED WITH PREJUDICE**.

BACKGROUND

Plaintiff, Darrell Bruce, initiated this class action suit against Defendant, Keybank National Association d/b/a Champion Mortgage.  According to Plaintiff, Defendant unlawfully accessed credit reports of numerous Porter County, Indiana and Lake County, Indiana consumers for the purpose of sending them letters offering a home equity loan.  Plaintiff alleges he received such a letter ("Letter") in May 2005.  Plaintiff contends that Defendant obtained his credit report without his permission in order to send the Letter and the Letter does not contain a firm offer of credit. Consequently, Plaintiff claims Defendant violated the Fair Credit Reporting Act ("FCRA").  15 U.S.C. § 1681 *et seq*.  Plaintiff further contends that he is entitled to statutory damages because Defendant's violation the FCRA was willful.  Not surprisingly, Defendant argues that the Letter does constitute a "firm offer of credit" and, in the alternative, even if the Letter does not constitute a "firm offer of credit," there is no evidence that Defendant wilfully violated the FCRA.  The parties

have filed cross-motions for summary judgment, which are at issue here.

DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts

showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).  "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"  *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988)(citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial."  *Beard v. Whitley County REMC*, 840 F.2d  405, 410 (7th Cir. 1988)(emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

When there are cross-motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor

of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

Facts

Plaintiff resides in Hobart, Indiana. (Pl. Dep. p. 33). In May 2005, Plaintiff received a mailing ("Letter") from Defendant, informing him that he was "pre-selected" to receive a "home equity line of credit with a minimum amount of $10,000." (Manno Dep. p. 9; Compl. Ex. A). The letter specified certain terms of the loan including: (1) the maximum loan to value on the line of credit; (2) the variable annual percentage rate ("APR"); and (3) that there were no application fees, PMI or prepayment penalties. (Def. SMF ¶¶ 23-24). The Letter went on to inform Plaintiff that "[a]ctual rates, fees and terms are based on those offered as of the date of application and are subject to change without notice." (Compl. Ex. A).

Before Defendant sent Plaintiff the Letter, one of its compliance officers, Cheryl O'Leary, reviewed the form of the Letter and verified that it satisfied the FCRA. (Def. SMF ¶ 12). At that time, the compliance officer believed that, although a "firm offer of credit" must not be a "sham offer," a written solicitation initiating the firm offer transaction need not contain every material term of the offer to satisfy the FCRA. (Def. SMF ¶ 36). Defendant obtained

information from Plaintiff's consumer report, without Plaintiff's authorization, in order to send him the Letter. (Pl. SMF ¶¶ 7-8, 20-21).

The Letter Does Not Constitute A Firm Offer of Credit

When interpreting the applicable FCRA provisions, the language and design of the statute must be kept in mind. *Milwaukee Gun Club v. Schulz*, 979 F.2d 1252, 1255 (7th 1992). The FCRA is designed to preserve the consumer's privacy in the information maintained by the consumer reporting agencies. 15 U.S.C. § 1681(a)(4). Specifically, FCRA prohibits businesses and other entities from obtaining information from the consumer's credit report if the consumer did not initiate the transaction and if a permissible purpose does not exist. 15 U.S.C. § 1681b. One permissible purpose is obtaining a credit report for the purpose of making a "firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i).

The FCRA defines a "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on a consumer, to meet specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(1).

In determining "whether the offer of credit comports with the statutory definition, a court must consider the entire offer and the effect of all the material conditions that comprise the credit product

in question. If, after examining the entire context, the court determines that the 'offer' was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." *Perry v. First National Bank*, 459 F.3d 816, 824 (7th Cir. 2006)(citations omitted). Factors that have been considered in determining whether a solicitation contained a "firm offer of credit, include whether: (1) "it was not clear that credit approval was guaranteed;" (2) "the precise rate of credit and other material terms were not included in the solicitation;" and (3) the maximum amount available for the loan "in relation to the known limitations" of the loan was included in the solicitation. *Id*.

Before determining whether Defendant's Letter made a "firm offer of credit" the Court must set the parameters of its analysis. Defendant argues that the entire loan transaction between itself and Plaintiff should be evaluated. In contrast, Plaintiff contends that the sole focus should be the initial solicitation sent in the form of the Letter. This issue has recently been thoroughly addressed by in *Murray v. Indymac Bank, F.S.B.*, No. 04 C 7669, 2006 WL 3253643, *2-3 (N.D. Ill. Nov. 7, 2006). There, the district judge found that the four corners of the initial solicitation was the proper focus. *Id*. Here, too, the proper focus for determining whether Defendant made a "firm offer of credit" is the content of the Letter. *See GMAC Mortgage*, 434 F.3d at 956 (in determining whether a lender has made a "firm offer of credit," "a court need only determine whether the

-7-

four corners of the offer satisfy the statutory definition (as elaborated in Cole), and whether the terms are honored when consumers accept.").

It is clear from the face of Defendant's Letter that recipients are preapproved for a loan of at least $10,000. The Letter provides that "We've Pre-Selected† you for a home equity line of credit for a minimum amount of $10,000 - and we may be able to get you much more." (Compl., Ex. A). By following the notation (†) affixed to the term "Pre-Selected," the Letter notifies the consumer that:

> You have received this offer based on information in your credit report. We selected you for this offer because it was determined, based on the information available at the time, that you satisfied our pre-existing credit criteria. In the event you respond to this offer, we will confirm our earlier decision by verifying your information. APR and credit terms will be based on verified credit qualifications. This offer may be withdrawn if we determine that you no longer meet the criteria established for this offer or fail to furnish the required collateral.

(Compl., Ex. A).

Thus, so long as the consumer's credit information remains in as good standing as it was when it was initially accessed, the consumer will be qualified to receive a loan from Defendant.

Although the Letter informs consumers they are pre-approved for a home equity loan, the Letter fails to disclose many of other material terms of that loan. Though it is true, as Defendant points out, that there are some terms disclosed by the Letter, (Def. Mem. In

-8-

Supp., p. 9), most of these terms are disclosed in terms of parameters rather than specifics.  For example, the APR of the home equity loan will be based on The Wall Street Journal prime plus 0.00%, which will vary but will never exceed 25% APR.  More troubling, though, is that the Letter does not include many material terms such as the length of loan, how the loan is to be repaid, how the interest will be compounded, or any fees associated with the loan.  A lack of material terms is not necessarily dispositive; however, it is a factor that weighs against the finding of a "firm offer of credit."  Perry, 459 F.3d at 824(noting that "the precise rate of credit and other material terms" are a factor to consider in determining whether a credit solicitation constitutes a "firm offer of credit").

Even if the Letter would have set out all of the then-existing material terms in detail, the Court would still be hard-pressed to find that a "firm offer of credit" existed.  This is because the Letter states that "Actual rates, fees and terms are based on those offered as of the date of application and are subject to change without notice."  (Compl. Ex. A).  Such language has been held to vitiate any possibility of construing a solicitation as a "firm offer of credit" under this Circuit's precedent. *Murray v. Indymac Bank, F.S.B.*, No. 04 C 7669, 2006 WL 3253643, *4 (N.D. Ill. Nov. 7, 2006); *Kudlicki v. Farragut Financial Corp.*, No. 05 C 2459, 2006 WL 927281, *2 (N.D. Ill. Jan. 20, 2006).  Thus, even had the letter set out all of the then existing terms, those terms would not necessarily be

applicable when the consumer applied for that loan.

Another factor to consider is the loan limit and how that credit could be used. *Perry*, 459 F.3d at 824. Here, the minimum loan amount is $10,000, and could be as much as $125,000. The possible use of the credit is without limitation. Both of these things, though, may be subject to change, as set forth above.

Ultimately, what is at issue is whether the Letter offered anything of real value to the consumer. *See Perry*, 459 F.3d at 826 (holding that "the focus of our inquiry is whether the credit solicitation offers value to the customer."). Under *Cole* and its progeny, the Letter did not offer anything of real value. The Seventh Circuit has stated that, aside from the amount of credit, the creditor and debtor "both must know of the other terms attached to that credit to determine whether it is advantageous to extend or to accept the offer" because the terms of the offer "may be so onerous as to deprive the offer of any appreciable value." *Cole*, 389, F.3d at 728. Such a conclusion remains true even if, as Defendant argues, circumstances outside the four corners of the Letter are relevant to a determination of whether it extended a "firm offer of credit."

<u>Defendant's Violation Of The FCRA Was Not Willful</u>

A consumer can recover actual, statutory and punitive damages against a defendant for violations of the FCRA. Actual damages are available if the consumer can show that he suffered some sort of

actual harm and that the defendant negligently violated a duty imposed by the FCRA. 18 U.S.C. § 1681o. The FCRA allows consumers to recover statutory and punitive damages against a defendant if those consumers can demonstrate that the defendant willfully failed to comply with the FCRA. 15 U.S.C. § 1681n. Here, Plaintiff only seeks statutory damages and contends that Defendant willfully violated the FCRA.

In order for a party to willfully violate the FCRA, the party must "knowingly and intentionally violate [the FCRA], and it 'must also be conscious that [its] act impinges on the rights of others.'" *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005)(quoting *Wantz v. Experian Information Solutions, Inc.*, 386 F.3d 829, 834 (7th 2004)). "The statute's use of the word 'willfully' imports the requirement that the defendant know his or her conduct is unlawful." *Phillips v. Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002)(cited with approval in *Wantz*). Under this framework, "the defendants cannot be held civilly liable if they obtained [the consumers'] reports 'under what is believed to be a proper purpose under the statute but which a court . . . later rule[s] to be impermissible legally . . ..'" *Id*.

Plaintiff points to various facts in the record in an effort to show that Defendant willfully violated the FCRA.[1] First, Plaintiff

---

[1] Notably, the parties differ as to what *mens rea* standard must be used to determine whether a willful FCRA violation exists. This is not entirely unreasonable, as there is a circuit split on the issue. One line of circuits allows a finding of willfulness when the Defendant acts with reckless disregard. *See*

complains that Defendant's compliance procedure is deficient because Defendant never had an attorney review the Letter to determine whether it complied with the FCRA. (Pl. SMF ¶ 75). Instead, Plaintiff claims Defendant relied upon a compliance officer, who could not recall whether she reviewed the form of the Letter prior to it being sent out. (Pl. SMF ¶ 59). It is true that Defendant did rely upon a compliance officer; however, contrary to Plaintiff's assertion, that officer did review the form of the Letter and determined that it complied with the FCRA. (O'Leary Dep. p. 68-69; O'Leary Dec. ¶¶ 6-12). Plaintiff also complains that the compliance officer was unaware of the Seventh Circuit's November 2004 decision in *Cole* prior to sending out the Letter in the spring of 2005. (Pl. SMF ¶ 65). Despite being unaware of the *Cole* decision by name, it is undisputed that the compliance officer was aware of the contents of that decision and believed that the Letter satisfied the holding in *Cole*. (O'Leary

---

*e.g. Reynolds v. Hartford Financial Services Group, Inc.*, 435 F.3d 1081 (9th Cir. 2006). The other line of circuits, which includes the Seventh Circuit, has a more stringent standard and allows a finding of willfulness only when "the defendant knew his conduct was unlawful." *See e.g. Wantz*, 386 F.3d at 834. Plaintiff believes that he "is not required to show that Defendant knew its action violated the Fair Credit Reporting Act in order to obtain summary judgment." (Pl. Reply in Supp. p. 10). This belief is pervasive throughout Plaintiff's argument and obviously follows the reckless disregard line of cases. However, until the split is resolved differently in the Supreme Court, the Court adheres to the "actual knowledge" approach adopted in this Circuit.

Dec. ¶¶ 13-14).[2]

Plaintiff also takes issue with the fact that Defendant subscribed to the Consumer Financial Services Law Report, which on December 29, 2004, issued a report that stated, in part, "The 7th U.S. Circuit Court of Appeals held that it is a violation of the FCRA for credit providers to access consumer credit information in connection with a 'sham' offer of credit.  A 'sham' offer of credit is an offer that has no real value to a consumer."  (Pl. SMF ¶¶ 57-58).  Plaintiff complains that, while the compliance officer was aware of that report, she nevertheless approved the form of the Letter which contained an interest rate that, while based on the Wall Street Journal prime rate, would be determined after the consumer provided additional information.  (Pl. SMF ¶ 72).  Despite Plaintiff's complaint, this does nothing to show that Defendant willfully violated the FCRA.  Even assuming that the compliance officer was aware of the December 29, 2004, report, there are no facts presented which establish that the compliance officer knew of a requirement that the precise interest rate must be included in a solicitation for it to constitute a "firm

---

[2]Plaintiff argues that O'Leary's subsequent declaration is inadmissible as being contradictory to her deposition testimony. There is little question that subsequent affidavits or declarations are inadmissible if they directly contradict earlier deposition testimony. *Adusumilli v. City of Chicago,* 164 F.3d 353 (7th Cir. 1998). Here, however, Plaintiff's relied upon statement of material fact cites to page 17 of O'Leary's deposition.  During this portion of the deposition O'Leary was merely asked if she was aware of the *Cole* decision, to which she replied no.  This does not directly contradict her subsequent declaration.

-13-

offer of credit."  This is not surprising because the inclusion of a precise interest rate is not itself determinative, but merely one factor in determining whether or not a "firm offer of credit" exists. *See Perry*, 459 F.3d at 824 (noting that "the precise rate of credit" is a factor to consider in determining whether a credit solicitation constitutes a "firm offer of credit").

Plaintiff next points to Defendant's in-house communications regarding credit-related contents in other mailings.  (Pl. SMF ¶¶ 77, 78).  Plaintiff argues that these communications show that Defendant was aware of its obligations under the FCRA but, nevertheless, failed to adhere to those obligations.  This Court disagrees.  Despite Plaintiff's argument, there is nothing linking the in-house E-mails with the Letter at issue.  The E-mails do not refer to the Letter nor is there any evidence linking them to the contents of the Letter.  (O'Leary Dep. pp. 61-64; P. App. F, KB0333- KB0335).  Simply, these E-mails are devoid of any direct or circumstantial evidence that could establish Defendant was willfully not complying with the FCRA regarding the Letter.

Ultimately, there is no smoking gun in this case; that is, there is no direct evidence of Defendant or any of its agents admitting that it knowingly and intentionally violated the FCRA and that it was conscious that its act impinged on the rights of others.  Moreover, though, upon review of the record as a whole, the Court concludes that there is no circumstantial evidence that would allow a reasonable

-14-

juror to find that Defendant willfully violated FCRA.

At the time the letter was sent, recent appellate authority in this Circuit — *Cole*, 389 F.3d 719 — significantly changed the legal landscape of what constituted a "firm offer of credit."  *See Cole v. U.S. Capital, Inc.*, No. 02 C 1858, 2003 WL 21003696 (N.D. Ill. May 1, 2003)(holding that "firm offer of credit" is present in a solicitation so long as the offer presented within that solicitation would ultimately be honored by the consumer), *rev'd, Cole*, 389 F.3d 719. While the court of appeals in Cole significantly altered the definition of "firm offer of credit," and what was required to be contained in an initial solicitation, it did not set forth a bright-line test regarding what constitutes a "firm offer of credit." Instead, it provided some guidance on the issue, which left room for creditors to determine what constitutes a "firm offer of credit."  The compliance officer who reviewed the form of the Letter was familiar with the FCRA as well as the holding in Cole and still approved the Letter, which ran afoul of the FCRA; however, this mistake, in and of itself, does not establish willfulness.  *See Murray v. HSBC Auto Finance, Inc.*, No. 05 C 4040, 2006 WL 2861954 *6, (N.D. Ill. Sept. 27, 2006)("To support a finding of willfulness, this court concludes that more evidence is needed than an assertion that the reviewing attorney was aware of the applicable FCRA standard.").

At most, Plaintiff has demonstrated that Defendant had less than perfect compliance procedures in place and Defendant failed to

-15-

properly follow the law of the Circuit as altered by *Cole*. Whether these misgivings were reasonable or not is immaterial, though, as the reasonableness of Defendant's actions is only implicated if a plaintiff seeks actual damages. 15 U.S.C. § 1681o. Again, to recover statutory damages Defendant must have willfully violated the FCRA. Defendant's failures are insufficient to support a finding of willful noncompliance. *Phillips*, 312 F.3d at 368("the defendants cannot be held civilly liable if they obtained [the consumers'] reports 'under what is believed to be a proper purpose under the statute but which a court . . . later rule[s] to be impermissible legally . . .").

Even taking the facts in a light most favorable to Plaintiff, he has still failed to show that Defendant had actual knowledge that it was violating the FCRA. Consequently, this Court concludes that no reasonable juror could find that Defendant willfully violated the FCRA.

CONCLUSION

For the reasons set forth below, the parties' motions are **GRANTED IN PART and DENIED IN PART**. Because there is no genuine issue of material fact that would allow a reasonable juror to find the Defendant willfully violated the FCRA, this case is **DISMISSED WITH PREJUDICE**.

**DATED: December 15, 2006**            **/s/RUDY LOZANO, Judge**
                                        **United States District Court**